**Anne KUSZYNSKI et al., Plaintiffs,**

**v.**

**CITY OF OAKLAND et al., Defendants.**

**No. C-70 2672.**

United States District Court,
N. D. California.

Feb. 11, 1971.

Serra & Perelson, Ronald Yank, San Francisco, Cal., John Murcko, Oakland, Cal., for plaintiffs.

J. Kerwin Rooney, Wilson F. Wendt, Oakland, Cal., for defendants.

MEMORANDUM DECISION

SCHNACKE, District Judge.

Plaintiffs by their original complaint as supplemented seek to enjoin the enforcement of, and to have declared un-

constitutional, an ordinance of the Board of Port Commissioners of the City of Oakland regulating the distribution of circulars and other material at the municipal airport. The ordinance imposes certain requirements for the distribution of commercial material. As to noncommercial material, it requires that prior to distribution the airport manager shall be notified one day in advance, be given a copy of any literature to be distributed or posted, be advised of the name and address of the person or organization sponsoring, conducting or promoting the activity. It is further required that the applicant state the purpose or subject of the prospective distribution, describe the proposed activity intended to be carried on, the time during which the distribution is intended and the number of persons planning to participate. The ordinance also prohibits hindering the free flow of persons, vehicles or aircraft in the airport, or preventing the orderly and efficient use of the airport property for its primary purpose; limits the number of persons who may engage in distribution activity in various areas of the airport facility; limits the time within which the activity can be carried on by any particular group to no more than four hours in any 24-hour period; prohibits intrusion into non-public areas of the airport; prohibits any person from assailing, coercing or threatening any member of the public; limits the size of tables to be used for the dispensing of literature and prohibits the use of sound or voice amplifying apparatus.

This ordinance supplemented a prior ordinance which defendants concede was too restrictive. Under the prior ordinance plaintiffs had been prohibited from distributing certain literature which is attached to their complaint. Among the literature intended to be distributed and distribution of which was prevented was a newspaper, highly critical of the United States and its military establishment, a handbill purporting to advise members of military under orders to Vietnam that they might avoid their orders, and a handbill crudely drawn representing a white woman displaying her private parts in a highly lascivious manner before a nude Negro male.

Neither the complaint, as supplemented, nor any of the affidavits filed in support of the request for preliminary injunction allege any experience under the amended ordinance, nor any restriction upon the distribution of literature that has occurred since the amendment has gone into effect.

Defendants urge that the amended ordinance is in a form substantially paralleling regulations of the Port of New York Authority which were drafted, apparently under the supervision of the United States District Court for the Southern District of New York, pursuant to guidelines approved in Wolin v. Port of New York Authority, 392 F.2d 83 (2nd Cir. 1968), certiorari denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275. There is a substantial parallel between the two regulations. Plaintiffs contend the new ordinance is invalid on its face because it gives preference to commercial literature, prevents the anonymous distribution of literature, limits the number of distributors on the sidewalk in front of the airport, and prevents distribution in certain public areas that are reserved for a particular use such as baggage areas, parking areas, washrooms, ticket-sale counters, restaurants and any areas devoted to business enterprise. Plaintiffs further contend that the ordinance imposes an impermissible prior restraint upon the exercise of their First Amendment rights and an impermissible delegation to the airport manager of the right to determine what literature should be distributed. They urge that the airport manager cannot be permitted to deny the distribution of any literature, but rather must first permit the distribution and then seek a court determination whether any of it should be ordered withdrawn. They criticize the ordinance further for its vagueness and generally for having a chilling effect upon free speech.

It must be recognized that the right of free speech is not unbridled. Cox v. State of Louisiana, 379 U.S. 536, at pp. 554–555, 85 S.Ct. 453, 13 L.Ed.2d 471. There is a variety of limitations that may be placed upon it. These limitations vary from circumstance to circumstance. The type of activity protected by the First Amendment in private areas, or in theatres, or in places customarily used for the dissemination of ideas, or in newspapers or periodicals voluntarily sought by the reader, or in a variety of other circumstances, can be quite different from those imposed in a crowded ' theatre, a children's playground or a private or public facility, primarily devoted to some particular endeavor.

The point is, of course, that citizens of the United States have many rights in addition to those of free speech. Each of these rights must be exercised, or may be limited, in a manner which, under all of the circumstances achieves proper balance, so that each may be exercised as freely as possible, but with as little as possible impairment of the rights of others which may conflict.

The Port of Oakland has the right to operate an air terminal in an uncrowded, uncluttered, uncontentious, pleasant, edifying, non-obscene, non-controversial manner. The airlines have a right to expect that their customers will be pleasantly received, welcomed, not shocked, not humiliated, not antagonized, not annoyed or disturbed by extraneous factors. The general traveling public is often tense, concerned or upset from merely being at an airport, awaiting a departure with nervousness or an arrival with apprehension. They have a right not to have their private thoughts intruded upon, and to be free of harrassment, controversy and humiliation. And, of course, plaintiffs and others have the right to freely express their ideas. Unfortunately, all of these rights cannot, without limitation, exist side by side. Hague v. CIO, 307 U.S. 496, 515, 516, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). We must be sure that "the

abrasions caused by any protected speech would too greatly interfere with other interests * * *." Wolin v. Port of New York Authority, *supra,* 392 F.2d at p. 90.

There are many areas in which the plaintiffs may freely exercise their First Amendment rights without intruding upon the airport, but it is not enough to permit them, as the British do, to get it off their chests in a Hyde Park type facility and to exclude them elsewhere. For the right of free speech to be meaningful it must be recognized that the speaker can, under reasonable circumstances, seek out his audience. Plaintiffs here indicate that the Oakland Airport is a place in which there are substantial concentrations of servicemen of a sort plaintiffs wish to reach by their literature. Their right to do so cannot be questioned.

It can, however, be limited. Jones v. Board of Regents, 436 F.2d 618, 620 (9th Cir. 1970), and cases cited. The primary function of the airport facility is to conduct the business for which it was constructed at substantial expense. It is a facility in competition with other facilities and if its public areas become a scene of dissension, or if the nature and type of First Amendment expression there is so offensive, or is of such sort as to intimidate, nauseate or revolt its prospective patrons, those patrons would soon find it more pleasant and more convenient to use other airline terminals or other means of transportation.

So there must be some limitation. It is plain from the literature these plaintiffs propose to distribute, at least from what might be called the "filthy handbill" that self-limitation is too much to expect. An airport attracts travellers of all sorts, including children, people of taste, refinement and discrimination, people who have been sheltered from, or have sheltered themselves from, the outer limits of permissiveness, and generally people who simply do not wish to have

thrust upon them material as offensive and revolting as the "filthy handbill," while they are rushing to or from a plane and worrying about the myriad things that air travellers have in mind. There may be a time and place for the distribution of such material but the airport is certainly not the place.

Plaintiffs urge that they must be permitted to distribute it and whoever is in control of the matter at the airport must not interfere with them without first having sought an order of court. Whatever may be the propriety of such a requirement in other places, it would be totally ineffective here. It is obvious that as soon as court approval had been granted for the banning of one piece of offensive matter by one distributor, another could be on the scene with a slightly different version to carry on until the court caught up with him. It is too much to ask that our law be so blind to the realities as to require any such exercise in futility as that.

The airport manager has a job to do and that is to make the airport as efficient, attractive and inviting a facility as is possible. He has a responsibility to the plaintiffs, but it is secondary. He must permit them to exercise their rights of free speech in as broad a fashion as is possible without interfering with his primary job, the running of the air terminal.

Examining the new ordinance in the light of the foregoing, it appears that the restrictions imposed are entirely reasonable. Under the ordinance there is permitted a wide latitude of distribution over many areas of the facility. All restrictions appear reasonable related to the nature and use of the air terminal and justified under the circumstances.

This matter is presently before the Court on plaintiffs' prayer for a preliminary injunction. The preliminary injunction is denied. Defendant shall prepare an appropriate order.