Ashton JONES, Appellant,

v.

**BOARD OF REGENTS OF the UNIVERSITY OF ARIZONA et al., Appellee.**

No. 24732.

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1970.

S. Leonard Scheff, Atty., Tucson, Ariz., for appellant.

Gary K. Nelson, Atty. Gen., Phoenix, Ariz., Paul F. Newell of May, Dees & Newell, Tucson, Ariz., for appellee.

Before JERTBERG, BROWNING, and ELY, Circuit Judges.

ELY, Circuit Judge:

Jones appeals from a judgment of the District Court dismissing a complaint alleging that certain of Jones' civil rights, conferred by the First and Fourteenth Amendments of the Constitution, were violated. 42 U.S.C. § 1983.

In November of 1965, Jones stationed himself near the Student Union building on the University of Arizona campus, at Tucson, donned a sandwich board sign which read "Help Stop Viet Nam war now. For Peace and Freedom," and began to distribute handbills, critical of the Viet Nam engagement, to those passers-by who would accept them. He was observed by two campus police officers who informed him of a university regulation prohibiting the distribution of all handbills not officially related to an authorized campus event and requested that he desist. Upon his refusal to do so, the officers forcibly removed him from the campus. Jones immediately returned, put on his signs, and began, once again, to pass out leaflets. A crowd of six to ten people then gathered round, and conversation concerning the Viet Nam war ensued. Later, two bystanders approached Jones, tore his signs from his back and chest, and destroyed them. By this time the crowd had reached twenty-five to thirty persons, the police had arrived, and Jones, having passed out all his leaflets, departed the area. That afternoon and evening the campus police received several phone calls informing them that if they, the police, could not remove Jones from the campus, the call-

ers would do so. On the following day Jones twice appeared on the campus and, on each occasion, was removed by the campus police. He then instituted this suit.

■ In a part of his amended complaint Jones sought an injunction *pendente lite*, directing the Board of Regents of the University to cease interfering with the exercise of his right to speak and enjoining the Board to afford him the protection reasonably necessary to insure that he could exercise that right while on the campus. From the District Court's denial of that prayer, Jones pursued an interlocutory appeal to our court. We affirmed the court's denial of temporary relief but remanded with the suggestion that consideration be given to the applicability of the provisions of 28 U.S.C. § 2281. Jones v. Board of Regents, 397 F.2d 259 (9th Cir. 1968). On remand, and after oral argument, the parties submitted the general preliminary questions of the liability of appellees for damages and of Jones' right to a permanent injunction for decision. Because the university regulation in question was limited in scope only to the University of Arizona campus at Tucson, the court concluded that 28 U.S.C. § 2281 was inapplicable. Upon the basis of the determination that the regulation was not of general statewide application, we agree with that conclusion of the District Court. Moody v. Flowers, 387 U.S. 97, 101–102, 87 S. Ct. 1544, 18 L.Ed.2d 643 (1967). *Cf.* Gilmore v. Lynch, 400 F.2d 228 (9th Cir. 1968), cert. denied, 393 U.S. 1092, 89 S. Ct. 854, 21 L.Ed.2d 783 (1969). The court then dismissed the complaint, finding that the regulation was valid and that Jones was properly and lawfully removed from the campus for having violated the regulation's terms.

The regulation on which the police based their eviction of Jones constitutes, in effect, a complete prohibition of handbilling on the campus grounds, even the portions thereof which, according to the District Court, are open to the pub-

lic generally. The regulation reads, in pertinent part:

> "No hand-out items, including handbills, may be distributed on the campus grounds or in campus buildings at any time, except programs and other informational items which are officially related to authorized meetings, and which are distributed in the room or rooms assigned to the event in question."

The question we thus face is whether a state university can constitutionally prohibit the distribution of all handbills on that part of its campus grounds which are open to the public generally.

■■ We begin with the proposition that once a State has made public property generally available to the public, it may not arbitrarily restrict the freedom of individuals, lawfully on that property, to exercise their First Amendment rights. Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966); Henry v. Rock Hill, 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964); Fields v. South Carolina, 375 U.S. 44, 84 S.Ct. 149, 11 L.Ed.2d 107 (1963); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Tucker v. Texas, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946); Jamison v. Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). In Jamison v. Texas, *supra*, for example, the Court invalidated a municipal ordinance barring the dissemination of information by handbills and recognized that "one who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion. This right extends to the communication of ideas by handbills and literature as well as by the spoken word." *Id.*, 318 U.S. at 416, 63 S.Ct. at 672. Of course, it is clear that the right to free speech is not so broad

as to guarantee that anyone may address a group at any public place, at any time, and in all circumstances. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed. 2d 471 (1965).

> "[W]here municipal or state property is open to the public generally, the exercise of First Amendment rights may be regulated so as to prevent interference with the use to which the property is ordinarily put by the State. \* \* \*

> "In addition, the exercise of First Amendment rights may be regulated where such exercise will unduly interfere with the normal use of the public property by other members of the public with an equal right of access to it."

Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, 391 U. S. 308, 320–321, 88 S.Ct. 1601, 1609, 20 L.Ed.2d 603 (1968).

■ The regulation before us now, however, is neither designed, by its terms, only to prevent the disruption of the ordinary educational activities of the campus nor to insure that those seeking to occupy the public campus grounds for communicating ideas will not interfere with those seeking to occupy the public grounds for other legitimate purposes. These ends could be accomplished by the imposition of reasonable rules regulating the time, place, and manner of the exercise of First Amendment rights. *See, e. g.*, Kovacs v. Cooper, 336 U.S. 77, 69 S. Ct. 448, 93 L.Ed. 513 (1949); Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). But the challenged regulation completely prohibits the distribution of any handbills, at any time, in places open to the public generally. Such a blanket prohibition is clearly unrelated to any valid regulatory purpose when applied to public property generally open to the public at large. Jamison v. Texas, *supra*; Schneider v. State, *supra*; Hague v. CIO, *supra*; Lovell v. City of Griffin, *supra*.

We reject the appellees' contention that a complete prohibition is necessary because disputes might arise if handbilling were allowed. The Supreme Court dealt with just such an argument in Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S. Ct. 733, 21 L.Ed.2d 731 (1969), wherein it rejected the District Court's conclusion that the action of certain high school authorities in banning the wearing of armbands was reasonable because it was based upon the authorities' fear of possible disturbances. The Court there stated:

"[I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk, Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society."

*Id.* at 508–509, 89 S.Ct. at 737. Neither the regulation nor the police action in this particular case can be justified by the fact that two members of the crowd were moved to tear the sandwich boards from Jones' body or that certain unidentified members of the community had threatened to remove him from the campus if the police failed to do so. Jones was lawfully and nonviolently exercising rights guaranteed to him by the Constitution of the United States. It is clear to us that the police had the obligation of affording him the same protection they would have surely provided an innocent individual threatened, for example, by a hoodlum on the street. A politically motivated assault is no less illegal than assaults inspired by personal vengeance or by any other unlawful motive. Indeed, in this case, the action of the police was misdirected. It should have been exerted so as to prevent the infringement of Jones' constitutional right by those bent on stifling, even by violence, the peaceful expression of ideas or views with which they disagreed.

■■ We similarly reject the argument that, since the regulation allows handbills "officially related to authorized meetings" to be distributed in rooms assigned to authorized meetings, the regulation is a valid "time, place and manner" regulation. While the regulation, in that aspect, may constitute a reasonable and permissible restraint on the use of areas, such as classrooms, which are not open to the public generally, it cannot justify the blanket prohibition of handbilling in areas open to the public generally. We so conclude despite the appellees' contention that any individual desiring to speak or to distribute literature on campus could probably secure a room in which to do so by acquiring student support, a faculty member's recommendation, and the administration's approval. When, only through such steps, can an avenue be opened by which an individual may communicate with students on a campus with areas open to the public, there is a scheme equivalent to "a statute providing a system of broad discretionary licensing power," Cox v. Louisiana, *supra*, 379 U. S. at 557, 85 S.Ct. at 466, and the scheme is constitutionally invalid. "In our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate. They may not be confined to the expression of those sentiments that are officially approved." Tinker v. Des Moines School Dist., *supra*, 393 U.S. at 511, 89 S.Ct. at 739.

Even, however, if it were established that the university administration's approval was not dependent upon the nature of the ideas that might have been

sought to be expressed at on-campus meetings held in university classrooms, the possible availability of those classrooms would not save the regulation. "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." Schneider v. State, *supra*, 308 U.S. at 163, 60 S.Ct. at 151.

Accordingly, the judgment of dismissal is vacated. Upon remand, the District Court will issue an injunction, permanently restraining the Board of Regents of the University and State Colleges of Arizona from interfering with Jones' right to speak and to distribute handbills on areas of the Tucson campus which are open to the public generally.

■ On the record before us, we cannot assume that the campus police will not hereafter afford to Jones the same protection against violent or other unlawful acts as would be afforded to any other individual lawfully exercising his constitutional rights upon the public areas of the Tucson campus. Since the District Court will retain jurisdiction, it may, should future events establish a basis therefor, modify its injunction so as to insure, insofar as is reasonably possible, that such will be the case. *See* Wolin v. Port of New York Authority, 392 F.2d 83 (2d Cir.), cert. denied 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968). In such event, the District Court may, of course, include within its injunction such reasonable terms and conditions as it may then deem appropriate in order that its injunction not be unduly burdensome, either to the appellees or to Jones.[1]

The issues relating to Jones' claim for damages under the Civil Rights Act must, in the first instance, be resolved by trial in the District Court. We note, however, that since the police avowedly acted in reliance upon a university regulation in evicting Jones from the campus, it may be well for the trial court to determine at the outset whether on undisputed facts recovery is barred by the doctrine of Pierson v. Ray, 386 U.S. 547, 555–557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Reversed and remanded, with directions.

---

1. For example, it would not seem unreasonable that the District Court might require Jones to give advance notice to the campus authorities of any appearance by him upon the campus which might be reasonably expected to provoke or incite unlawful acts against him. Wolin v. Port of New York Authority, 392 F.2d 83 (2d Cir.), cert. denied 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968).