519 P.2d 169

**NEW TIMES, INC., an Arizona corporation, and Arizona Civil Liberties Union, an Arizona non-profit corporation, Appellants,**

v.

**ARIZONA BOARD OF REGENTS, B. J. Varney, and Marvin Johnson, Appellees.**

**No. 11357–PR.**

Supreme Court of Arizona, In Banc.

Feb. 28, 1974.

S. Leonard Scheff, Tucson, for appellants.

Gary K. Nelson, Atty. Gen., Phoenix, John S. O'Dowd, Asst. Atty. Gen., Tucson, for appellees.

LOCKWOOD, Justice:

This matter arises out of a petition for review of an opinion of the Court of Appeals, New Times v. Ariz. Bd. of Regents, 20 Ariz.App. 422, 513 P.2d 960 (1973), reversing, a judgment against the New Times, Inc., a newspaper publisher.

New Times, Inc. publishes an off-campus newspaper which is distributed free of charge to college students on the campuses of the state universities. The University of Arizona adopted regulations which limit the distribution points of off-campus newspapers to a total of six distribution points on the Tucson campus. In addition a fee of $2.00 per newsstand is charged for each issue. Each newspaper is also required to register with the appropriate campus authorities. The ostensible purpose of the regulations is to limit the amount of litter resulting from the disposal of such newspapers and to cover the additional costs of litter removal involved. Newspapers which are sold from vending machines and the school newspaper, The Wildcat, are exempt from the regulations. The practical result of the regulations was that only the New Times was affected.

The New Times brought a civil action alleging that the regulations were unconstitutional and asked that their enforcement be enjoined and damages awarded. The Superior Court, Cause No. 133589, Robert O. Roylston, J., refused the relief requested and the newspaper appealed. The Court of Appeals held that the regulations restricting the number of distribution points and the clean-up fee constituted an unreasonable infringement of the First Amendment rights of the newspaper. The decision of the trial court was reversed.

In a motion for a rehearing the Board of Regents argued that because the newspaper is a commercial enterprise, it is subject to more restrictions than speech which is noncommercial in nature and therefore the regulations were valid. The motion for a rehearing was denied and the Board of Regents now appeals to this court.

The regulations in question are as follows:

"UNIVERSITY OF ARIZONA CAMPUS NEWSPAPER REGULATIONS"

"1. Newspapers, as defined, herein, other than the Arizona Daily Wildcat, may be distributed on the campus or grounds or in the buildings of the University of Arizona only in accordance with these regulations.

"2. The term 'newspaper' when used in these regulations shall include newspa-

pers whether or not published or distributed regularly and whether or not a charge is made therefor.

"3. Any person desiring to distribute a newspaper on the campus or grounds or in buildings of the University only by sale in coin-vending machines may apply to the Director of the Student Union for permission to place vending machines at such appropriate locations as the Director shall designate. The Director shall cause space to be made available at such locations for the vending machines of any newspaper so applying. No newspaper coin-vending machines shall be permitted or placed in any other locations on the campus or grounds or in the buildings of the University.

"4. Any person desiring to distribute a newspaper on the campus or grounds or in buildings of the University by means other than by sale in coin-vending machines may apply to the Director of the Student Union for permission to place racks, stalls, or other containers for distribution at such appropriate locations as the Director shall designate. The Director of the Student Union shall cause space to be made available at not more than six such locations, if, and so long as:

"(a) Each applicant has completed an application form which shall set forth, in addition to such other information as may be required by the Director of the Student Union, the true names and principal addresses of the real publisher or publishers, and the real distributor or distributors of the newspaper; and

"(b) The applicant has provided for the distribution of the newspapers at each such location an appropriate rack, stall, or other container in which the papers can be kept in an orderly manner; and

"(c) The applicant has paid, in advance, the sum of $2.00 for each daily, weekly, monthly, or other publication of the newspaper for each location applied therefor. (For example, a weekly publication distributed at three locations would pay $6.00 per week; a monthly publication distributed at six locations would pay $12.00 per month.)

"5. Any person aggrieved by any act, decision, or order of the Director of the Student Union may within fifteen days from such act, decision, or order, appeal to the Vice President of the University for University Relations, who may affirm that act, decision, or order or modify it as he shall see fit within the limitations imposed by these regulations."

The validity of the regulations promulgated by the University is assailed by the appellant, New Times, as violating the federal constitution in two particulars. First it is argued that the regulations abridge the freedom of the press in contravention of the First Amendment. Secondly it is argued that the regulations deny them equal protection under the law. For the reasons that follow we hold that the regulations are an unconstitutional infringement of the right to a free press as guaranteed by the first amendment. This being the case it is unnecessary to address ourselves to the second argument of the appellant.

In testing the constitutionality of an ordinance we are bound to follow the following rules: (1) There is a presumption in favor of the constitutionality of a legislative enactment, State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964); (2) the person assailing the validity of a statute or ordinance has the burden of establishing that it infringes upon a constitutional guarantee or violates a constitutional principle. State v. Krug, supra; (3) the court must be satisfied beyond a reasonable doubt that the statute is unconstitutional, Shaw v. State, 8 Ariz.App. 447, 447 P.2d 262 (1968); (4) every intendment must be indulged in favor of the validity of the statute. Shaw v. State, supra; (5) constitutional provisions shall not be given a construction which will nullify legislation but must be liberally construed. Shaw v. State, supra.

In the event that a right guaranteed to the people under the first amendment is abridged by the ordinance then the ordinance can only be upheld by a showing of a compelling state interest. Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). In addition neither an "inherent tendency" nor a "reasonable tendency" to cause a substantive evil is sufficient to justify a restriction of free expression. Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941); Times-Mirror v. Sup. Ct. of Cal., 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). The foregoing is subject to the further caveat that constitutionally permissible restrictions on First Amendment rights must be drawn with narrow specificity. In re Kay, 1 Cal.3d 930, 83 Cal. Rptr. 686, 464 P.2d 142 (1970).

Any question regarding infringement of First Amendment rights is of the utmost gravity and importance for it goes to the heart of the natural rights of citizens to impart and acquire information which is necessary for the well being of a free society. The predominant purpose of the grant of immunity to the press here invoked was to preserve an untrammeled press as a vital source of public information. The newspapers of this country have shed more light on the affairs of this nation than any other instrumentality. Since an informed public is the most important of all restraints upon misgovernment, the suppression or abridgement of the publicity afforded by a free press cannot be regarded otherwise than with grave concern. The First and Fourteenth Amendments were intended to preclude Congress and the States from adopting any form of restraint on printed publications, or their circulation, including those restraints which had theretofore been affected by means of censorship, license, and taxation, and from taking any governmental action which might prevent free and general discussion of public matters as seems essential to prepare the people for an intelligent exercise of their rights as citizens. Grosjean v. American Free Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936).

It is well established that the freedom of the press extends to circulation and distribution as well as to the publishing of the newspaper itself. Talley v. Cal., 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); Griswold v. Conn., 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Tucker v. Texas, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). However the right to freedom of speech and press does not mean one can talk or distribute where, when and how one chooses. Reasonable time, place, and manner regulations of expressive activity may be necessary to further significant governmental interests and are permitted. Breard v. City of Alexandria, La., 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

The crucial question in determining whether the regulation of expressive activity is reasonable is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. Grayned, supra. The exercise of first amendment rights may be regulated where such exercise will unduly interfere with the normal use of public property by other members of the public with an equal right to access to it. Thus access to property for the purpose of exercising first amendment rights may be denied altogether where such property is not ordinarily open to the public, and even where state property is open to the public generally the exercise may be regulated as to prevent interference with the use to which the property is ordinarily put by the state. Food Employees v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). We must begin with the proposition that the state has already opened the campus to

the public generally and may not arbitrarily restrict the freedom of individuals, lawfully on the property to exercise their first amendment rights. Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966); Henry v. Rock Hill, 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964); Fields v. South Carolina, 375 U.S. 44, 84 S.Ct. 149, 11 L.Ed.2d 107 (1963); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Tucker v. Texas, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946); Jamison v. Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

The issue now before us is determining whether the regulations promulgated by the University of Arizona for the regulation of the distribution of newspapers are constitutional. The regulations before us are neither designed to prevent the disruption of the ordinary educational activities of the campus nor to insure that those seeking to distribute newspapers will not interfere with those seeking to occupy the public grounds for other legitimate purposes. The sole rationale for the regulations put forth by the appellees is that they were promulgated in order to limit the amount of litter resulting from the disposal of newspapers and to cover the additional cleanup costs involved.

█ █ It is well settled that minor matters of public inconvenience or annoyance cannot be transformed into substantive evils of sufficient weight to warrant the curtailment of liberty of expression by legislative preferences or beliefs. In Schneider v. Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) the Supreme Court rejected the rational of litter control as a reasonable justification for the assessment of a special fee against distributors of handbills. The court held that any burden imposed upon authorities in cleaning and caring for the streets is an indirect consequence of such distributions resulting from the constitutional protection of the freedom of speech and press. This line of reasoning was also followed by the Court in Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), which held that the right to distribute literature may not be withdrawn even if it creates a minor nuisance for the community which had the burden of cleaning up the litter from the streets. Based upon the foregoing cases it is obvious that the problem of litter control is not of sufficient importance to balance the risk of abridging First Amendment freedoms. In the event that the University wishes to limit the amount of litter resulting from the disposal of newspapers it clearly has the power to regulate the conduct of those who actually cause the litter rather than the publishers of such newspapers.

In addition the regulations validity cannot be maintained against the challenge that they are unconstitutional for the reason that the regulations make no provision for the distribution other than by means of coin-vending machines or stalls. Thus a person is precluded from handing out newspapers without the permission of the University. This is similar to another regulation promulgated by the University of Arizona which prohibited the distribution of handbills. That regulation was found to be unconstitutional in Jones v. Board of Regents, 436 F.2d 618 (1970). In that case the Ninth Circuit Court of Appeals held that:

"But the challenged regulation completely prohibits the distribution of any handbills, at any time, in places open to the public generally. Such blanket prohibition is clearly unrelated to any valid regulatory purpose when applied to public property generally open to the public at large. [Citations omitted.]" 436 F.2d at 620.

\* \* \* \* \* \*

"We so conclude despite the appellees' contention that any individual desiring to speak or to distribute literature on cam-

pus could probably secure a room in which to do so by acquiring student support, a faculty member's recommendation, and the administration's approval. When, only through such steps, can an avenue be opened by which an individual may communicate with students on a campus with areas open to the public, there is a scheme equivalent to 'a statute providing a system of broad discretionary licensing power,' Cox v. Louisiana, supra, 379 U.S. [536], at 557, 85 S.Ct. [453], at 466 [13 L.Ed.2d 471], and the scheme is constitutionally invalid. 'In our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate. They may not be confined to the expression of those sentiments that are officially approved.' Tinker v. Des Moines School Dist., supra, 393 U.S. [503], at 511, 89 S.Ct. [733], at 739 [21 L.Ed.2d 731]." 436 F.2d at 621.

Similarly in the instant case the University requires all newspapers which are not being sold by means of coin-vending machines to take numerous and cumbersome steps prior to their being allowed to distribute their newspapers. In addition the locations where such distributions may take place are solely within the discretion of the University officials. Finally the location points have been arbitrarily limited to a maximum of six locations. On this basis we must find that the rules imposed are overbroad and unreasonable, going beyond the permissible limits applicable to rules regulating the time, place, and manner of the exercise of First Amendment rights.

Finally with regard to the $2.00 distribution fee that the University charges per issue, we find that the imposition of any fee on the right to distribute is constitutionally impermissible. Regardless of the label attached to the fee by the Board of Regents, the fee constitutes a license on the right to distribute printed material. While the freedom of the press is not absolute, any limitations must be closely confined so as to preclude what may be fairly deemed licensing or censorship. Kingsly Books v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). This is a clear case of the publisher of a newspaper being charged a fee for a license which entitled them to distribute their newspaper on the University campus. We reject the University's argument that the publishers may freely distribute their paper off the campus without charge. As was pointed out in Jones v. Board of Regents, supra 436 F.2d at 622, a person may not have his rights of freedom of expression abridged in appropriate places on the grounds that they may be exercised in some other place.

In a case heavily relied on by the appellees in its arguments for upholding the fee involved, Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), the Court upheld an ordinance which required a license and a fee for a parade. This was upheld because the imposition of the license requirement did not substantially endanger the right of free expression and the fee was apportioned to and contingent upon the expense incident to the administration of the ordinance and maintenance of the public order in the matter licensed. That ordinance was permissible because a parade is a substantial disruption of the public order requiring special police protection and the fee imposed was apportioned and reasonably required those who placed the burden on the community for a special display of their own opinions to pay for it. Neither of those two conditions which justify the licensing requirements in Cox exist here. The distribution of a newspaper is not a parade. There is no substantial disruption of the public order engendered by the distribution of the New Times. The fee is not apportioned in any rational manner. The fee is not reasonably required to be placed on the publisher of the paper.

The litter created in the process of distributing the New Times does not pose any additional cost burden upon the University which the appellants should pay. The litter problem does not arise from a special event which places an extraordinary bur-

den on the community for a short time and is traceable to a single individual or group. The exercise of individual rights is desirable for the good of the community and for which the community at large must pay for rather than upon those persons who are exercising their rights under the constitution. Finally the University failed to fulfill the burden of establishing that the fee is reasonable under the circumstances or that it has a rational relationship to the actual costs of cleaning such litter up. This is due to the fact it would be pragmatically impossible to determine what percentage of litter is actually attributable to the New Times and what additional costs arise from cleaning up such litter.

■ The appellees in the Petition for Review argue that the commercial nature of the newspaper somehow narrows the protection of the freedom of the press, thereby allowing the state to make restrictions which would be impermissible in the case of speech or publications of a noncommercial nature. This is clearly erroneous. The United States Supreme Court has held on numerous occasions that the free publication and dissemination of books and other forms of printed matter are within the constitutionally protected freedoms of liberty of press or speech, and that it is immaterial that dissemination takes place under commercial auspices. N. Y. Times v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964); Smith v. Calif., 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed. 2d 205 (1959). The commercial nature of the activity is no justification for narrowing the protection of expression secured by the First Amendment. Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L. Ed.2d 31 (1966).

In Pittsburgh Press v. Human Rel. Comm'n., 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) the court said:

"If a newspaper profit motive were determinative, all aspects of its operations —from the selection of news stories to the choice of editorial position—would be subject to regulation if it could be established that they were conducted with a view towards increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment." 413 U.S. at 385, 93 S.Ct. at 2558, 37 L. Ed.2d at 667.

Whether the Board of Regents may constitutionally charge all newspapers a rental fee for providing space for their stands was not at issue in this case. Since this issue was not raised by either party, we decline to pass on it at this time.

■ The final issue for determination is whether a state court has jurisdiction to entertain the appellant's claim for damages under 42 U.S.C.A. § 1983. We agree with the Court of Appeals concerning this issue when it said:

"No public policy requires that state courts refuse to entertain § 1983 actions. Assumption of jurisdiction in state courts would, on the contrary, operate to the convenience of the parties on occasions. We note that many citizens of this state, because of their geographical residence, would be inconvenienced if they were forced to litigate in a federal, rather than a state, court. Moreover, there is strong authority indicated that the Federal Constitution prohibits a state court of general jurisdiction from refusing to exercise jurisdiction over a suit solely because it is brought under a federal law. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); McKnett v. St. Louis & S. F. Ry., 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227 (1934); Mondou v. N. Y., N. H. & H. R. Co., 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1912)." New Times v. Arizona Board of Regents, 20 Ariz.App. at 427, 513 P. 2d at 965 (1973).

For these reasons we will not preclude the state courts from granting a full measure of relief from wrongs inflicted by state agencies by reading into the statute an impediment where none exists.

Accordingly the judgment of the trial court is reversed and the opinion of the Court of Appeals is vacated.

HOLOHAN, J., concurs.

CAMERON, Vice Chief Justice (specially concurring):

I concur in the result based upon the rules and regulations as quoted in the opinion above. I do not believe, however, as the majority opinion may infer, that the First Amendment to the United States Constitution, as judicially interpreted, requires the University of Arizona to provide, free of charge, space on campus for the placement of racks, stalls, and other containers for the distribution of this or any other publication.

HAYS, C. J., and STRUCKMEYER, J., concur with the foregoing special concurrence.