## CHICAGO AREA MILITARY PROJECT et al., Plaintiffs-Appellees,

v.

## CITY OF CHICAGO et al., Defendants-Appellants.

No. 74–1475.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1974.

Decided Jan. 8, 1975.

As Amended Feb. 4, 1975.

---

\* Honorable William T. Beeks, United States District Judge, Western District of Washington, sitting by designation.

Richard L. Curry, Corp. Counsel, Richard F. Friedman, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellants.

Edward T. Stein, Chicago, Ill., for plaintiffs-appellees.

Before SWYGERT, Chief Judge, and MARIS[*] and CUMMINGS, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the defendants from an order of the district court enjoining them from preventing the plaintiffs from distributing literature to servicemen and the general public in the terminal buildings at O'Hare Airport, Chicago, except as to the areas immediately leading to the arrival and departure gates.

The plaintiffs, the Chicago Area Military Project, an unincorporated nonprofit organization located in Chicago and known as CAMP, and four of its members and associates brought the suit against the defendants, the City of Chicago and the Mayor, Superintendent of Police, and Commissioner of the Department of Aviation, of the City, claiming that actions by the defendants and their agents and employees in prohibiting the plaintiffs from passing out literature within the terminal buildings at O'Hare Airport deprived them of the rights of free speech, free press, and peaceable assembly guaranteed them by the federal constitution. The plaintiffs' complaint

[*] Of the Third Circuit, sitting by designation.

sought an injunction restraining the defendants from further depriving them of these rights and a declaration that the defendants' practice and acts were in violation of the Constitution and that their own conduct in distributing literature was protected by the First and Fourteenth Amendments. An amended complaint was filed including a second count, claiming damages, which is not involved in this appeal.

The district court granted a temporary restraining order. Subsequently a preliminary injunction was issued which on appeal this court vacated for failure of the district court to state its findings of fact and conclusions of law as required by Rule 52(a) of the Rules of Civil Procedure and because the injunction lacked the specificity required by Rule 65(d). 492 F.2d 1246. In response to our mandate the district court thereafter stated findings of fact and conclusions of law and entered an order enjoining the defendants and their agents and employees from "obstructing plaintiffs engaged in leafletting or otherwise distributing CAMP NEWS or other literature within the terminal buildings (not to include the 'fingers' leading to the arrival and departure gates) of O'Hare Field Airport." This order has been treated by the parties as a permanent injunction and we shall so regard it. From the order granting this injunction the defendants took the appeal now before us.

It appears that the plaintiff CAMP publishes a monthly newspaper called *CAMP News (News of the GI Movement)* which is primarily directed to members of the military forces but is also distributed to the general public. It carries news of the "GI Movement", news of recent legal and political developments pertinent to military personnel and news of a general nature. One of the methods used to disseminate *CAMP News* is to hand out free copies at O'Hare Airport to individuals, particularly servicemen, who desire to receive them.

O'Hare Airport, located within the limits of the City of Chicago, is owned by the City and administered by the City's Department of Aviation. It is a two-or-three-minute drive from the nearest residential area, a thirty-minute drive from the Chicago downtown area with which it is connected by major expressways and is served by bus lines and taxicabs. Private automobiles are accommodated in massive public parking lots. Leased space in the airport terminal buildings houses numerous concessionaires including restaurants and shops of every description. Seventy-two departure gates handle more than 100 flights per hour during peak periods. Approximately 20,000 persons are employed at the airport and a total of 100,-000,000 passengers, persons accompanying them, and employees, use the facility each year. The district court found as a fact that large numbers of persons in the military service use the airport, many without ever leaving the terminal buildings, merely changing flights there for other locations.

At 6:00 p. m. on Sunday, March 11, 1973 Truman Walker, an associate of CAMP, and Steve Romanowski, a member, commenced distributing *CAMP News* to servicemen in one of the O'Hare Airport terminal buildings in the general area of the check-in counters but somewhat removed from the lines of persons waiting to be served at the counters. They did not approach anyone in a line. Approximately an hour later they were told by a plain-clothes policeman and subsequently by a uniformed Chicago police officer that leafletting was not permitted and that if they persisted in their activity, they would be arrested. The two then informed five other leafletters who were distributing the newspaper in the waiting areas in other terminal buildings what had transpired and all left the airport. One of the plaintiffs testified that he stopped leafletting because his family responsibilities were such that he could not afford being arrested.

The municipal regulation, admittedly unwritten, which the defendants enforced against the plaintiffs had been in

existence since before the opening of the present terminal buildings at O'Hare Airport. It appears that it was orally promulgated by the Director of Airports of the City prior to June 1, 1956 and, in the words of the Director, it provided in substance that

> "no person shall be permitted to picket, sell anything (except for authorized concessionaires or lessees, and they only at assigned spaces) distribute literature of any nature, or solicit or collect contributions within any building at any airport operated by the City of Chicago."

The defendants assert that this oral regulation was promulgated under the authority of sections 8.2–2 and 37–4 of the Municipal Code of the City of Chicago and of the prior ordinances codified in those sections, and that it is enforceable under section 193–1.4(b) of the Code. Section 193–1.4 is in pertinent part as follows:

> "193–1.4. A person commits trespass when he knowingly:

> .    .    .    .    .

> (b) Remains upon the property, or any part thereof, of another after receiving notice, either oral or written, from the owner or occupant to depart; or

> (c) Enters upon property open to the public, or any part thereof, and remains thereon with a malicious and mischievous intent after receiving notice, either oral or written, from the owner or occupant to depart.

> Any person convicted of trespass shall be fined not less than $5.00 nor more than $500.00."

However, in the view which we take of the case it becomes unnecessary for us to consider the question whether the Municipal Code does authorize the promulgation and enforcement of such an oral regulation as the one upon which the defendants here rely.

■ The First Amendment to the Constitution proscribes federal action which abridges an individual's right to freedom of speech, press and assembly and it has long been settled that the Fourteenth Amendment extends these First Amendment proscriptions to state action. De Jonge v. Oregon, 1937, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278. One of the primary reasons for the adoption of the First Amendment was to ensure the right to distribute copies of one's own publication in public places. Near v. Minnesota, 1931, 283 U.S. 697, 716–717, 51 S.Ct. 625, 75 L.Ed. 1357, Lovell v. City of Griffin, 1938, 303 U.S. 444, 451–452, 58 S.Ct. 666, 82 L.Ed. 949. In Schneider v. State, 1939, 308 U.S. 147, 162, 60 S.Ct. 146, 84 L.Ed. 155, the Supreme Court, deciding that the evil of the littering of its streets was not a sufficiently grave reason for a city to ban all leafletting, pointed out that in such a situation the evil required to be regulated was, in fact, the act of littering not the activity of leafletting. While not contesting these basic constitutional principles, the defendants strongly urge that the terminal buildings at the O'Hare Airport, because of the limited purpose which they serve, are not public places of the kind in which unrestricted leafletting must be permitted. In considering this contention we lay aside for the moment the question whether leafletting may be restricted in those particular areas, if any, in the terminal buildings where unrestricted leafletting might substantially interfere with airport operations.

In support of their contention that the terminal buildings at O'Hare Airport are not public places where the restriction of leafletting is constitutionally prohibited the defendants make a number of arguments. They assert that public ownership of the airport is not determinative of the question of the plaintiffs' protection under the First Amendment, citing Marsh v. Alabama, 1946, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265. They claim that only a limited invitation is extended to the public to use the airport and that this is determinative, citing Lloyd Corp. v. Tanner, 1972, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131. Alleging that its

function, location, and often congested condition make the airport an inappropriate forum for First Amendment protected expression, the defendants cite Adderley v. Florida, 1966, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149, and Lehman v. City of Shaker Heights, 1974, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770. Asserting that its users represent a captive audience for leafletters, the defendants rely on Lehman v. City of Shaker Heights, *supra.* Finally, the defendants argue that other appropriate forums are available to the plaintiffs.

■ The proscriptions of the First and Fourteenth Amendments are primarily directed to governmental activity. But since O'Hare Airport is government-owned and administered, the Amendments are directly applicable to it. Marsh v. Alabama, *supra,* involved a privately owned "company town" and is inapplicable here except to reinforce the plaintiffs' claim to protection of their right to free speech, since the Supreme Court in that case saw fit to extend the overriding interest of the United States in freedom of speech as expressed in the Constitution even to privately owned property. Lloyd Corp. v. Tanner, *supra,* which merely clarified the extent of the application of the First Amendment to private property, is also inapplicable. That case involved a privately owned shopping center mall. In that case the owners were not required by the Court to permit handbilling on a controversial subject unrelated to their enterprise. The only similarity of that case to this one is the commercial nature of the airport facility. However, the plaintiffs do not here claim any right to distribute leaflets on airplanes or in other privately owned or leased places but only in the spacious, city-owned common areas which resemble those public thoroughfares which have been long recognized to be particularly appropriate places for the exercise of constitutionally protected rights to communicate ideas and information. Hague v. CIO, 1939, 307 U.S. 496, 515–516, 59 S.Ct. 954, 83 L.Ed. 1423. This well-established principle has been applied to a publicly owned bus terminal

in Wolin v. Port of New York Authority, 2d Cir. 1968, 392 F.2d 83, cert. den. 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275, and to the airport of the City of Oakland in Kuszynski v. Oakland, 9 Cir. 1973, 479 F.2d 1130.

■ The City's claim that the public receives a limited invitation to use O'Hare Airport for travel purposes only is not supported by the evidence nor do we think it is realistic. For the fact is that great numbers of people are freely admitted to the public areas of the terminal buildings not only in connection with air travel, but also for shopping, dining, sightseeing, or merely to satisfy their curiosity. There is no question but that the terminal buildings at O'Hare Airport, city-owned and operated, are freely available to the general public and that their wide-open public areas which perhaps 90,000 transients visit daily can accommodate seven persons peacefully distributing, in groups of twos and threes, free copies of their publication to interested persons. Indeed, although airport and airline officials testified that unrestricted leafletting and solicitation could conceivably interfere with important airport operations, the City does not contend that the activities of the plaintiffs do in fact obstruct airport traffic.

■ The defendants argue that not all publicly owned facilities are available for every expression of free speech and they cite Adderley v. Florida, *supra,* and Lehman v. City of Shaker Heights, *supra.* With this we, of course, agree. Thus hospitals, libraries, office buildings and prisons may call for restrictive regulations appropriate to their functions. The Supreme Court, in upholding the conviction of 32 student demonstrators on charges of trespass with malicious and mischievous intent on the premises of a county jail, stated, in distinguishing an earlier case, "Traditionally, state capitol grounds are open to the public. Jails, built for security purposes, are not." Adderley v. Florida, *supra,* at p. 41, 87 S.Ct. at 244. The public areas of the terminal buildings at O'Hare Airport are not security facilities and are open to the public.

Like the decision in Adderley v. Florida, *supra,* Lehman v. City of Shaker Heights, *supra,* does not purport to deal with the distribution of the printed word, the traditionally protected expression of free speech with which we are here concerned. The *Lehman* case, settling an equal protection argument as to access to car card spaces in the vehicles of a city-owned rapid transit system, is based almost entirely upon the nature of the free-speech expression involved therein, display advertising, as to which the passenger's eye is captive. The city's policy in that case of refusing to permit political display advertising in its cars occupied by paying commuters was upheld. The case has no relevance to the present problem.

■ Defendants' argument that the plaintiffs have alternate forums for distributing their literature and that for this reason access to O'Hare Airport may be totally denied under the Constitution is without merit. An individual "is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." Schneider v. State, 1939, 308 U.S. 147, 163, 60 S.Ct. 146, 151; Amalgamated Food Employees v. Logan Valley Plaza, 1968, 391 U.S. 308, 323–324, 88 S.Ct. 1601, 20 L.Ed.2d 603; Wolin v. Port of New York Authority, 2d Cir. 1968, 392 F.2d 83, 91–92, cert. den. 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275.

■ The defendants have argued that the plaintiffs failed to establish their right to a preliminary injunction because they failed to prove that if such relief was not granted they would suffer irreparable injury during the trial. As to this it is perhaps enough to point out that the injunction now before us on this appeal has been treated by the parties as a final injunction terminating the litigation. However, we think that in any case an adequate showing of irreparable injury has been made. For the evidence indicates that the defendants, through their agents, threatened the individual plaintiffs with arrest if they persisted in asserting their First Amendment rights. Such threats undoubtedly had a chilling effect on the plaintiffs' exercise of their rights, in fact deterring them from exercising those rights. This was an adequate showing to support injunctive relief in a case of this kind. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.

■ We conclude that the district court did not err in enjoining the defendants from obstructing the plaintiffs from leafletting in the terminal buildings of O'Hare Airport. At the same time we recognize, as the district court did when it excluded the "fingers" leading to the arrival and departure gates from its injunction, that the Constitution does not prohibit all regulation of leafletting in publicly owned facilities. Regulations narrowly drawn to protect the state's substantial interests with the least possible constriction of the exercise of free speech and press have long been upheld. Cox v. Louisiana, 1965, 379 U.S. 559, 562, 85 S.Ct. 476, 13 L.Ed.2d 487. Thus regulations prohibiting leafletting might validly be extended from the passageways leading to the arrival and departure gates to include also leafletting at check-in counters, for example, if it should appear that such activities substantially interfere with rapid and efficient airport operations. However, it does not appear from the present record that the plaintiffs' leafletting took place at check-in counters or with people waiting at them to be checked in or that the plaintiffs intend in the future to carry on their activities at such places. It will be time enough, therefore, to consider enlarging the present exception to the general scope of the injunction in question if and when the City promulgates a suitable restrictive regulation and makes the requisite showing to the district court of the need for it.

Affirmed.