**UNITED STATES LABOR PARTY et al., Plaintiffs,**

v.

**Charles E. KNOX, Chairman of the Mecklenburg County Alcoholic Beverage Board, et al., Defendants.**

**No. C–C–76–237.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

May 2, 1977.

**1360**

Norman B. Smith, Smith, Patterson, Follin, Curtis & James, Greensboro, N. C., for plaintiffs.

William E. Underwood, Jr., Caudle, Underwood & Kinsey, Charlotte, N. C., for defendants.

## ORDER

McMILLAN, District Judge.

The United States Labor Party over a period of time solicited the support and money of patrons at various Mecklenburg County, North Carolina, ABC liquor stores until the ABC Board, by resolution, prohibited such activity by anyone on ABC store premises. The Labor Party brought this action under 42 U.S.C. § 1983 to enjoin enforcement of a portion of the resolution as a violation of their First Amendment rights.

A hearing was conducted on October 4, 1976, to determine whether a preliminary injunction should issue. Since that time defendants have moved for summary judgment and both sides have submitted proposed findings of fact and conclusions of law. The material facts are not in dispute. Upon consideration of the arguments and briefs of counsel, and the numerous supporting affidavits submitted by each party, the court concludes that enforcement of the challenged portion of the Board's resolution abridges the plaintiffs' First Amendment rights and should be restrained.

Liquor is sold in North Carolina exclusively by state owned ABC stores. North Carolina General Statutes § 18A–1 *et seq.* The defendant County Board operates seventeen such stores in Mecklenburg County. N.C.G.S. § 18A–17(1). Ten of these are located in private shopping centers and seven are "free-standing" stores not attached to any complex.

On November 25, 1975, the defendant Board promulgated the challenged resolution, which provides in material part:

"NOW, THEREFORE, BE IT RESOLVED that handbilling, soliciting or loitering on the premises of local ABC stores is forbidden and any person on said premises for these purposes shall be deemed a trespasser; and

"Resolved FURTHER, in the case of shopping centers or other locations at which other activities take place, this resolution shall apply only to the immediate

environs of the entrance and exit and the interior of the store."

Before this resolution, the Labor Party had successfully distributed political literature and collected contributions in the parking areas and around the entrances of ABC stores in both free-standing locations and in shopping center locations.

The plaintiffs do not contest enforcement of the resolution insofar as it prohibits activities in the immediate environs of the store entrances and exits. Counsel for the Board has assured the court that the provision excluding "shopping centers or other locations . . . ." from the scope of the resolution will be observed.

The arena for this contest between free speech and public regulation is therefore only the *parking areas of the seven free-standing ABC stores.*

Until passage of the challenged resolution, the Labor Party regularly obtained a substantial part of its operating income from donations of ABC store patrons, and it distributed political literature to them as well. According to affidavits in the record, the Party made "important political contacts" during that time. Affidavits also state that enforcement of the Board's resolution will affect the ability of the Labor Party to promote its cause. (This court, incidentally, has no sympathy with that cause, as that cause is understood by the court.)

The board contends by way of affidavit that the efficient operation of its liquor stores requires unhindered flow of pedestrian traffic into and out of the stores and between parking lots and stores. The Board says that solicitation in the past by a wide variety of groups and causes has created congestion and disrupted the free flow of patrons and liquor.

In *Amalgamated Food Employees Union Local # 590 v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 315, 88 S.Ct. 1601, 1607, 20 L.Ed.2d 603 (1968) (overruled on other grounds, *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976)), the Supreme Court said:

"Streets, sidewalks, parks, *and other similar public places* are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." (Emphasis added.)

Publicly owned streets, sidewalks and parks are "historically associated with the exercise of First Amendment rights" in part because, historically, those places were where the *people* were. Handbilling, soliciting, and speaking in downtown areas could be expected to reach the great numbers of citizens who shopped and worked there. Unable to go onto private property, people with a message went to the streets and sidewalks to spread their word, ultimately deriving First Amendment protection for their activities.

The automobile has radically changed the places where people shop and otherwise appear in public. In many places downtown streets have emptied and patronage of suburban shopping centers has swelled. The new "downtowns" (including the shopping centers with ABC stores not subject to the regulations here) are usually privately owned and thus not accessible as of right to the activities associated with free speech. *Hudgens v. NLRB, supra; Lloyd Corporation v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). People en route to the shopping plazas in cars are ordinarily beyond the practical reach of speech.

Handbillers and solicitors are therefore remitted to the "other similar public places" that most closely resemble the traditional gathering places of the people—the parking areas and approaches to state stores and other public buildings.

█ For speakers and handbillers to be able to compete in the marketplace of ideas, these publicly owned gathering places of the people must be available, under reasonable regulation, for orderly exercise of First Amendment rights.

█ It is no answer to say that radios in automobiles and television and newspapers in homes carry enough ideas and opinions to

the public. Free speech is not the exclusive province of those with money enough to buy time or space in the news media. Without opportunities for effective hand-billing and other direct, inexpensive contracts with the public, the less powerful will be poorly heard however worthy their speech.

Nor are the news media charged with nor capable of the responsibility of germinating every new idea. Movements of critical importance, including the civil rights movement, developed momentum in the streets and in handbills and exhortation, not from broadcast or newspaper editorials. A suburbanized society whose public buildings and stores were cordoned off from free speech activities might never hear the first calls of new causes that would otherwise ignite public interest.

The continuing importance of making public places available for speech and related activities has been affirmed in *CAMP v. City of Chicago*, 508 F.2d 921 (7th Cir. 1975), and *Wolin v. Port of New York Authority*, 392 F.2d 83 (2nd Cir. 1968). Analogizing transportation terminals to traditionally protected public thoroughfares, the courts blocked attempts (in *CAMP*) to forbid First Amendment activities inside an airline terminal, O'Hare Field in Chicago, and (in *Wolin*) to forbid similar activities in a New York bus terminal.

■ Public parking areas, in this age of the automobile, are no less public places and no less entitled to First Amendment protection than bus or airline terminals or downtown sidewalks.

■ Protected public arenas for free speech are subject to reasonable regulations, *narrowly drawn*, to protect the public interest in order and efficiency. The circumstances here permit of only that kind of regulation.

Plaintiffs have submitted proposed regulations they claim will minimize any congestion and delay while protecting their access to the citizens who patronize the ABC stores. The proposed regulations would prohibit solicitation or handbilling at or near the *entrances* of the stores, relieving the congestion most often cited in the defendants' affidavits, and would prohibit approaching anyone not already parked. No activity at all would be permitted unless parking space was continuously available. Plaintiffs' affidavits, uncontradicted in this respect by defendants, say that even at the busiest times parking spaces at ABC stores are usually available.

The proposed regulations may or may not prove to be an adequate resolution of the conflicting interests here, but they illustrate that regulations can be drawn that will achieve the desired result.

Defendants say that the ABC stores are designed for a high volume, low cost operation that runs most efficiently when nothing exists to delay the passage of patrons. Affidavits tendered by the defendants (but contradicted by plaintiffs) say that, in the past, the aggressive tactics of solicitors have interfered with parking and with movement around store entrances, causing delay and distracting otherwise busy store personnel.

Defendants object to any but a blanket prohibition. They argue that their limited security staff of nine cannot police all seventeen stores effectively and that store personnel cannot be expected to help without increasing the risk of pilferage or theft.

The first and practical answer to that objection is that plaintiffs have acceded to enforcement of the resolution at all but the seven free-standing ABC stores, and regulations can, if necessary, be drawn to require some advance notice to the security staff whenever groups plan to solicit at particular locations.

■ Second, and more fundamentally, the public must bear some inconvenience in order that free speech be protected. The Supreme Court held years ago, for example, that towns must bear the expense of cleaning up litter in order to permit handbilling on public streets. *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). The County Board has no less a responsibility.

Taking defendants' claims as true, they state only reasons for *regulation*, not for a total *ban* on free speech.

IT IS THEREFORE ORDERED:

1. That pending further order of court, the resolution not be enforced against plaintiffs and others similarly situated or engaged, in respect of First Amendment activities in the parking areas of any of the free-standing ABC stores in Mecklenburg County.

2. That defendants may if they wish tender regulations less stringent than paragraph 1 of this order, and the court will be glad to confer with all counsel if desired and attempt to help work out agreement as to regulations that all parties can live with.

3. That plaintiffs advise by May 16, 1977, whether they seriously wish to pursue their claims for damages.

4. That no class action will be certified.